# United States District Court
# Central District of California

| | |
|---|---|
| ALFREDO SANTIBANEZ,<br><br>        Plaintiffs<br><br>    v.<br><br>CITY OF LOS ANGELES; OFFICER DAVID BUNCH (#38552); and DOES 1 through 10, Inclusive,<br><br>        Defendants. | Case No. 2:17-cv-04189-ODW-JCx<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [27]** |

## I.    INTRODUCTION

Plaintiff Alfredo Santibanez brought one cause of action against Defendants City of Los Angeles, Officer David Bunch (#38552), and Does 1 through 10, for excessive use of force in violation of his civil rights under 42 U.S.C. § 1983. (*See* Compl. 7, ECF No. 1.) Defendant Bunch seeks summary judgment on the bases that his use of force was objectively reasonable as a matter of law and he is entitled to qualified immunity. (Def.'s Mot. for Sum. Judg. ("MSJ") 2, ECF No. 27.) For the reasons below, the Court **DENIES** Bunch's Motion.[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

On August 22, 2015, at approximately 11:30 p.m., Officers David Bunch and Boyan Brkic were conducting "crime suppression" in the Hollenbeck area, near Soto Street in an unmarked police vehicle. (Def.'s UMF[2] 1, 3; Pl.'s SUF 29.) Officer Brkic observed Alfredo Santibanez jaywalking across Soto Street and slowed to avoid him. (Def.'s UMF 3–4.) Officer Brkic stopped and exited the vehicle but remained behind the ballistics door, so Santibanez did not see what he was wearing. (Def.'s UMF 5; Pl.'s SUF 9, 36.) The officers knew nothing about Santibanez when they came upon him, and he did not look familiar to them. (Pl.'s SUF 23.) At this point, the parties' facts diverge: Officer Brkic said something along the lines of "Hold on, I want to talk to you" (Def.'s UMF 6) or "Are you strapped?" (Pl.'s SUF 10). Officer Brkic saw the butt of a gun jutting from Santibanez's jacket pocket (Def.'s UMF 10), but Santibanez testified in deposition that he had no gun (Pl.'s SUF 11). Officer Brkic said "gun" or something similar, and Bunch unholstered his weapon. (Def.'s UMF 10–11.) The parties agree that Officer Brkic did not draw his gun at that time. (Pl.'s SUF 40.) At no time did the officers identify themselves verbally, though they wore full dark-blue LAPD uniforms. (Def.'s UMF 2; Pl.'s SUF 31.)

Santibanez continued walking away and began to run, and Bunch pursued him. (Def.'s UMF 8, 12–13.) Santibanez testified at deposition that he ran because "in this area two guys with bald heads jumping out of the car is 'no good.'" (Pl.'s SUF 14.) The parties' statements of fact do not indicate either officer commanding Santibanez to stop running or drop a weapon.[3] (*See generally* Def.'s UMF; Pl.'s SUF.) Again the parties' facts diverge: Officers Bunch and Brkic testified in deposition that they observed Santibanez running, with a gun in his right hand, begin to turn his body to

---

[2] As used herein, Defendant's "Proposed Statement of Uncontroverted Material Facts" ("Def.'s UMF"), ECF No. 27-2; "Plaintiff's Separate Statement of Uncontroverted Facts" ("Pl.'s SUF"), ECF No. 30.

[3] Although neither parties' statements of fact indicate either officer commanding Santibanez to stop or drop a weapon prior to Bunch firing, Bunch's deposition testimony suggests Bunch may have said "Stop" at least once. (Smith Decl. Ex. B, Bunch Dep. 94:10, 96:2, 97:24, ECF No. 27-1.)

2

his right, toward Bunch (Def.'s UMF 15–17), but Santibanez testified that he never turned his body as he ran (Pl.'s SUF 16). The parties agree that Bunch shot Santibanez three times.[4] (Def.'s UMF 18.) The bullets struck Santibanez's left lower leg, left upper arm, and right posterior hip. (Def.'s UMF 19; Hicks Decl. Ex. 4, ECF No. 29.) Photographs of Santibanez's injuries show that at least one bullet, if not all three, struck him from behind. (Hicks Decl. Ex. 4.) The officers testified that they observed Santibanez drop a gun from his right hand after he was shot. (Def.'s UMF 20.) A gun was later recovered near where Santibanez fell. (Def.'s UMF 26.) The officers handcuffed Santibanez, called a rescue ambulance for treatment, and ultimately arrested and charged him with being a convicted felon in possession of a firearm. (Def.'s UMF 23, 24, 27.) Following a criminal trial, a jury acquitted Santibanez of all criminal charges against him. (Def.'s UMF 28, 29.)

Santibanez then filed this lawsuit. (Def.'s UMF 30.)

### III. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the moving party's version of events differs from the nonmoving party's version, courts must "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt" about a material issue of fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for

---

[4] Although not included in the parties' statements of fact, Bunch testified in deposition that the entire encounter, from when he first saw Santibanez until he fired his gun, consumed only "about 15 seconds." (Smith Decl. Ex. B, Bunch Dep. 124:15.)

3

trial. *Id.* at 587; *Celotex*, 477 U.S. at 323–24. Genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).

A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Further, although the Court may not weigh conflicting evidence or make credibility determinations, *Anderson*, 477 U.S. at 255, more than a mere scintilla of contradictory evidence must exist to survive summary judgment, *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A genuine dispute of a material fact exists where there is sufficient evidence supporting the claimed factual dispute, requiring a trier-of-fact to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 250.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3. District courts have broad discretion in interpreting and applying their local rules. *See Cortez v. Skol*, 776 F.3d 1046, 1050 n.3 (9th Cir. 2015); *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983).

4

# IV. DISCUSSION

Santibanez sued Defendants for excessive use of force in violation of his civil rights under 42 U.S.C. § 1983. (*See* Compl. 7, ECF No. 1.) Bunch seeks summary judgment on the bases that his use of force was objectively reasonable as a matter of law and that he is entitled to qualified immunity. (MSJ 2, ECF No. 27.) Bunch also objects to Santibanez's opposition evidence, which objections the Court addresses first to the extent necessary for the purposes of this motion.

## A. Evidentiary Issues

Bunch objects to Santibanez's Separate Statement of Uncontroverted Facts ("SUF") and to Exhibits 4–7 submitted in support of his opposition.

"To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.")); *see also* Fed. R. Civ. P. 56(c)(2) (providing for objections to evidence that "cannot be presented in a form that *would be* admissible") (emphasis added). At the summary judgment stage, the focus is on the admissibility of the evidence's content, rather than its form. *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

Notably, "the Ninth Circuit long ago adopted 'a general principle' whereby it 'treat[s] the opposing party's papers more indulgently than the moving party's papers.'" *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1121 (E.D. Cal. 2006) (quoting *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985)). This is because "a non-movant in a summary judgment setting is not attempting to prove its case, but instead seeks only to demonstrate that a question of fact remains for trial." *Id.*

First, Bunch objects to Santibanez's SUF on the bases that (1) it does not comply with the local rules as it is not concise and does not set forth any genuine material facts to be tried, and (2) the facts are "unnecessary, wholly irrelevant (FRE 401 and 402), speculative, self-serving, lack foundation, hearsay, improper opinion and violate FRE 701 and 702." (Reply 1, ECF No. 31.) Bunch asks the Court to strike Santibanez's SUF, find the opposition defective, and grant Bunch's motion on that basis. (Reply 1.)

The Court declines to strike Santibanez's SUF or find it wholly defective. Santibanez's SUF contains genuine material facts to be tried, many of which Bunch disputes. Further, the SUF complies with Federal Rule of Civil Procedure 56(c). To the extent the Court expressly considers Santibanez's statements for the purposes of this motion, the Court construes them in accordance with Local Rule 56 and overrules Bunch's objections.

Next, Bunch objects to the admissibility of Santibanez's Exhibits 4–7 (4: photographs of Santibanez's injuries; 5: LAPD DNA Report; 6: LAPD Fingerprint Report; and 7: LAPD Gunshot Residue Report) on the bases that each exhibit is "[n]ot relevant, hearsay, lacks foundation, FRE 701 and 702." (Def.'s Obj. to Pl.'s Exs. 2, ECF No. 33.)

Regarding Santibanez's Exhibit 4 (also referred to by Santibanez as Exhibit "D"), Santibanez's attorney, Mr. Hicks, submitted these as "true and correct copies of photographs of Santibanez' [sic] injuries" via declaration. (Hicks Decl. ¶ 5.) The location and direction of Santibanez's injuries is relevant and probative, tending to support resolution of the material disputed fact regarding whether Santibanez turned his body as he ran.[5] *See* Fed. R. Evid. 401. The photographs are not hearsay. *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1109 (9th Cir. 2015). Neither party contests their authenticity. *See Burch*, 433 F. Supp. 2d at 1124 ("[B]ecause

---

[5] Further, and despite his objections, Bunch relies on Exhibit 4 to dispute Santibanez's material fact number 55 regarding the location of the bullet wounds, further demonstrating the photographs' probative value. (*See* Def.'s Reply and Obj. to Pl.'s SUF 55, ECF No. 32.)

6

defendants do not actually dispute the authenticity of these documents, the court is confident plaintiff *would* be able to authenticate them at trial, which is all that Rule 56(e) demands."). With proper foundation, the photographs may be admissible at trial. Alternatively, Santibanez may present proper testimony as to the location of his injuries. Focusing on content rather than form, the Court finds it appropriate to consider the photographs for purposes of summary judgment. As such, the Court overrules Bunch's objections to Santibanez's Exhibit 4.[6]

### B. Excessive Force

Bunch argues that his use of force was objectively reasonable as a matter of law. The Court disagrees.

Excessive use of force incident to a search or seizure is subject to the Fourth Amendment's objective reasonableness requirement. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, excessive force claims will usually present jury questions: "[w]here the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury; only in the absence of material disputes is it a pure question of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) and *Scott*, 550 U.S. at 381 n.8) (internal quotation marks omitted). As such, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Id.* at 1125 (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

The Court assesses reasonableness by balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

---

[6] In so doing, the Court holds only that the photographs are admissible for the purposes of summary judgment. Because the parties' statements, depositions, and the photographs raise disputed material facts sufficient to defeat summary judgment, the Court need not reach Santibanez's Exhibits 57 or Bunch's related objections.

### 1. Nature and Quality of the Intrusion

"The intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). It implicates the highest level of Fourth Amendment interests. *A. K. H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016). The parties do not dispute the use of deadly force. So the issue is whether the governmental interests justified it.

### 2. Government Interests at Stake

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Police officers are frequently called on to make split-second judgments in circumstances that are rapidly evolving. *Id.* at 396–97. The "question is whether the officers' actions are 'objectively reasonable' in light of" the totality of circumstances. *Id.* at 397. In *Graham*, the Supreme Court listed several factors for courts to consider when evaluating an officer's use of force. *Id.* at 396. These include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* These factors are not exclusive and other relevant factors, such as whether proper warnings were given, may also be considered. *See Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010); *Doerl v. Rutherford*, 272 F.3d 1272, 1283–84 (9th Cir. 2001).

Turning to the *Graham* factors, the parties do not dispute that the initiating crime was jaywalking. The officers were conducting crime suppression, not responding to a police call, when they came upon Santibanez crossing the street outside designated signals. At the time they encountered him, they knew nothing more than what they could perceive at that moment. Viewing the facts in the light most favorable to Santibanez, he had no gun and no other crime had been committed. Thus, the lack of severity of the crime of jaywalking weighs against use of deadly force.

Regarding whether Santibanez was actively resisting arrest or attempting to evade arrest by flight, even equating an arrest with an investigatory stop, the parties do not dispute that the officers did not verbally identify themselves as police. The officers wore full police uniforms, but Santibanez testified that he did not see what they were wearing because they stood behind the vehicle doors. The parties' statements of material fact do not indicate that the officers commanded him to stop or drop a weapon as he ran away from them. And Officer Brkic's statement is at least "Are you strapped?" and at best unclear. The lack of verbal identification or any command to drop a weapon make it reasonable to believe that Santibanez was not running to evade arrest. Thus, this factor also weighs against the use of deadly force.

The most important factor is whether Santibanez posed an immediate threat to the safety of the officers or others. *A.K.H.*, 837 F.3d at 1011; *Bryan*, 630 F.3d at 826. Bunch argues that his use of deadly force was objectively reasonable because Santibanez had begun to turn toward him with a gun as he ran away, posing an immediate threat to Bunch and Brkic. (MSJ 5 (arguing that Bunch feared "for his life and that of his partner" when he fired); Def.'s UMF 18.) However, "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Doerle*, 272 F.3d at 1281. The disputed facts are such that a reasonable jury could conclude that Santibanez had no gun and did not turn his body as he ran, and thus posed no immediate threat. Additionally, Bunch escalated to deadly force very quickly, with no warnings that he would shoot. *See supra* at 3 n.4. Viewing the evidence in the light most favorable to Santibanez, this factor also weighs against the use of deadly force. Therefore, a reasonable jury could find that Office Bunch's use of deadly force was not objectively reasonable.

Bunch's reliance on *Easley v. Riverside*, 890 F.3d 851 (9th Cir. 2018) is misplaced, as the circumstances differ critically. In *Easley*, the patrolling officers began following a car with what appeared to be illegally-tinted windows after

9

recognizing the driver from a prior encounter. *Id.* at 854. Here, Bunch knew nothing about Santibanez and had no prior context on which to rely. In *Easley*, when the car began driving erratically, the officers activated the patrol car's lights and sirens, effectively informing Easley of police presence. *Id.* Here, the officers did not activate the unmarked car's lights or sirens, and neither officer identified himself verbally, leaving a question as to whether Santibanez knew they were police. As in *Easley*, Bunch was concerned about the presence of a gun. But in *Easley*, importantly, the parties did *not* dispute that Easley had a gun or turned his body as he ran. *Id.* at 857. The same cannot be said here. The disputed fact of whether Santibanez turned his body as he ran informs the most important factor of the *Graham* analysis, the perceived threat posed by the suspect.

Taking the evidence in the light most favorable to Santibanez, a reasonable jury could conclude that Bunch's use of deadly force was not objectively reasonable. Consequently, genuine issues of material fact preclude summary judgment on Santibanez's excessive force claim against Bunch.

### C. Qualified Immunity

Bunch also seeks summary judgment on the basis that he is entitled to qualified immunity as a matter of law. He is not.

"The doctrine of qualified immunity insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority." *Deorle*, 272 F.3d at 1285. Qualified immunity requires a two-pronged analysis: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations and quotation marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). A clearly established constitutional right "must be particularized to the facts of the case." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017) (internal quotation marks omitted). "[T]he

focus is on whether the officer had fair notice" that his actions violated a constitutional right and was unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Where the constitutional right violated was clearly established, the officer was on notice that his conduct was unreasonable, and he is not entitled to qualified immunity. *A.K.H.*, 837 F.3d at 1013.

A court may address either prong of the qualified immunity analysis first. *Pearson*, 555 U.S. at 236. If the answer to either prong is no, the court need not continue, as the officer is entitled to qualified immunity (either because he has violated no constitutional right, or because the right was not clearly established at the time). *See Wilkins*, 350 F.3d at 954–55. However, if the answer to either prong is *yes*, a court must still consider the remaining prong. *See A.K.H.*, 837 F.3d at 1013; *Bryan*, 630 F.3d at 832. To deny qualified immunity, the answer to both prongs must be yes, that the officer violated a constitutional right which was clearly established at the time. *See Pearson*, 555 U.S. at 232; *Torres*, 648 F.3d at 1123.

"[S]ummary judgment in favor of moving defendants is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits." *Davis*, 854 F.3d at 598 (quoting *Liston v. City of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997)) (alterations in original). "Where the officer['s] entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins*, 350 F.3d at 956.

The first prong of the qualified immunity analysis "is not simply a reiteration of the *Graham* test" applied above. *Deorle*, 272 F.3d at 1285. Rather, the question is whether, in using excessive force, the officer made "reasonable mistakes as to the legality of [his] actions.'" *Saucier*, 533 U.S. at 206. Every police officer should know that it is objectively unreasonable to shoot an unarmed fleeing suspect who poses no immediate threat. *See Garner*, 471 U.S. at 11 ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."). The Court would have to

view the multiple disputed material facts in favor of Bunch, rather than Santibanez, to find Bunch's use of deadly force objectively reasonable in the circumstances. At the least, the question of whether Bunch was reasonable to believe that Santibanez turned back toward Bunch while running away, when in Santibanez's version he did not turn, is a question of fact best resolved by a jury. When viewed in the light most favorable to Santibanez, as the Court must on summary judgment, a reasonable jury could find Bunch's use of deadly force not objectively reasonable and violative of Santibanez's Fourth Amendment right. The first prong must be answered in the affirmative: the facts Santibanez has alleged or shown make out a violation of a constitutional right.

Looking to the second prong, at the time of the incident, case law had clearly established that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others. *Garner*, 471 U.S. at 11 (concluding deadly force permissible only where "the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm . . . ."); *Torres*, 648 F.3d at 1128. Viewing the disputed facts in the light most favorable to Santibanez, he had no gun, was running away, and did not turn his body as he ran. In short, he posed no immediate threat. It was clearly established at the time of the incident that use of deadly force was unlawful under those circumstances. The second prong must also be answered in the affirmative.

As both prongs are answered in the affirmative, Bunch is not entitled to qualified immunity as a matter of law and summary judgment is not appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Bunch's Motion for Summary Judgment (ECF No. 27).

**IT IS SO ORDERED.**

September 6, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**